IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| In Re: | ) |  |
| --- | --- | --- |
|  | ) |  |
| THOMAS HICKEY, | ) | Case No. 19-05061-TOM-13 |
|  | ) |  |
| Debtor. | ) |  |

## MEMORANDUM OPINION AND ORDER

This case came before the Court on March 5, 2020, for a hearing on confirmation of the Debtor's proposed Chapter 13 plan and the Objection to Confirmation and Motion to Dismiss filed by the Chapter 13 Trustee. Appearing before the Court were Chad Cotant, attorney for Thomas Hickey (the "Debtor"), and Brad Caraway, Chapter 13 Trustee. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a) and the District Court's General Order of Reference Dated July 16, 1984, as Amended July 17, 1984.[1] This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(L).[2] This Court has considered the pleadings, the arguments of counsel, and the law, and finds and concludes as follows:[3]

### FINDINGS OF FACT[4]

---

[1] The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:
> The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

[2] 28 U.S.C. §157(b)(2)(L) provides as follows:
> (b)(2) Core proceedings include, but are not limited to–
> . . . .
>    (L) confirmation of plans[.]

[3] This Memorandum Opinion and Order constitutes findings of facts and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to contested matters in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Bankruptcy Procedure 9014.

[4] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

Thomas Hickey, the Debtor, filed this chapter 13 bankruptcy case on December 10, 2019. In his schedules he lists only one secured debt, and that is a debt owed to SE Toyota Finance ("SE Toyota") secured by a 2015 Toyota Tundra. On Schedule D the Debtor listed the amount of the debt as $12,110; however, after claim number 4 was filed on December 20, 2019 as secured in the amount of $10,894.96,[5] the amount of the debt in the Debtor's amended Chapter 13 plan was changed to match the amount in claim number 4.

In addition to the one secured claim, the Debtor has substantial unsecured debt totaling over $58,000 consisting primarily of loans, lines of credit, and credit cards. For example, claim number 3 of Arvest Bank is based on a note the Debtor signed on March 1, 2017. The loan, in the amount of $30,000, was to be repaid with interest accruing at a rate of 15.99% through monthly payments of $650.98 per month beginning on April 1, 2017. Based on the documents attached to the claim, it appears that the loan proceeds were used to pay two credit cards for a total of approximately $7,100.00. In addition, loan proceeds of over $23,000 were paid to the Debtor. However, the Debtor has provided no information about how these loan proceeds were spent.

Claim number 5 filed by OneMain Financial is for another loan received by the Debtor. Based on the attachments to the proof of claim, it appears that the Debtor received a check, presumably through the mail, in the amount of $7,000. On the face of the check is a notation stating "[t]his is a solicitation for a loan. Read the attached loan agreement before signing and cashing or depositing this check." The check, dated May 30, 2017, was apparently negotiated on June 12, 2017 – a little over three months from the date of the Arvest loan.[6] The loan was to be

---

[5] On his schedules and in his amended plan the Debtor identifies the secured creditor as "SE Toyota Finance." However, claim number 4 identifies the creditor with a lien on the 2015 Toyota Tundra as "World Omni Financial Corp." For convenience, the Court will identify the secured creditor as "SE Toyota."

[6] The Loan Agreement and Disclosure Statement also attached to the proof of claim explains that the loan date, identified as June 12, 2017, is "[t]he date the attached check is cashed or deposited."

2

repaid with 29.49% interest through monthly payments of $249.96 beginning on July 12, 2017.

According to claim number 10, the Debtor also negotiated a check sent to him from Mariner Finance just a few months later. The attachments to the proof of claim evidence that this check, in the amount of $2,550.00, similarly contained a disclosure instructing "this is a loan. Read the enclosed disclosures before signing this agreement." The check was dated August 28, 2017 and negotiated on September 20, 2017. This loan was to be repaid with interest at a rate of 30.30% with monthly payments of $116.79.[7] Thus, in a period of a little more than six months in 2017, the Debtor incurred almost $40,000.00 of unsecured debt. The Debtor has provided no information regarding how or for what purpose the funds were used. In addition to the unsecured loans already discussed, there are multiple claims in the Debtor's case for varying credit cards including home improvement retailers Lowe's for $5,058.46 and Home Depot for $2,342.53.

According to Schedule I, the Debtor is self-employed[8] with a monthly gross income of $2,000. His spouse, who is not a debtor in this case, is a nurse practitioner in a law firm with a monthly gross income of $10,000. The Debtor's spouse is by far the bigger earner of the two and presumably pays the mortgage payments of approximately $2,200 per month.[9] Although the Debtor signed the mortgage, and thus has some contractual obligations to the mortgage company, his amended plan fails to reference or provide for the mortgage at all.[10]

---

[7] According to the print on the back of the check, payments were to begin "one month after the date our bank pays this Check . . . ."

[8] In his 2018 tax return the Debtor indicates "car clean up" as his "principal business or profession" and "Wayne Auto Detail" as his "business name."

[9] While the Debtor and his spouse are both on the mortgage, only his spouse is on the note. Doc. 17, Objection to Confirmation filed by JP Morgan Chase Bank, National Association, Ex. A (Note) and Ex. B (Mortgage).

[10] The Debtor's amended plan fails to reference the Debtor's mortgage in any way. The mortgage company, JPMorgan Chase Bank, National Association ("Chase"), filed an objection to confirmation on the grounds that the Debtor's plan failed to provide for the payment of prepetition arrears. The Debtor's original plan was subsequently amended but still did not provide for payment of the arrears or otherwise mention the mortgage; however, Chase withdrew its objection the evening before the hearing on confirmation. The Trustee's Objection to Confirmation and Motion to Dismiss did not address the Debtor's failure to provide for the mortgage in the plan. Even though there are no outstanding objections relating to the Debtor's omission regarding the mortgage, this Court considers the omission to be a barrier to confirmation in light of *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 277, 130 S. Ct. 1367,

3

According to the Debtor's proposed amended Chapter 13 plan he intends to pay the automobile debt directly to SE Toyota through payments of $456.00 per month as opposed to making payments to SE Toyota through the Chapter 13 Trustee. This provision served as a basis for the Chapter 13 Trustee's objection to the proposed plan.[11]

At the hearing on confirmation, counsel for the Debtor argued that the "unique circumstances" of this case warrant a direct payment. According to counsel, the contract rate of interest is lower than the *Till* rate of interest[12] typically used in Chapter 13 plans; thus, by paying the debt direct the Debtor would save on interest. In addition, the Debtor would save the fees that the Trustee would otherwise collect for administering the claim.[13] Counsel also argued that the debtor would receive additional savings by making the payment direct because less than two years remain on the original contract term. Further, counsel asserted that no creditor would be negatively impacted by the Debtor paying the SE Toyota debt direct since the Debtor has proposed to pay all unsecured claims in full, and that unsecured creditors may actually benefit because payments to them would start more quickly than if the secured automobile debt was paid through the Trustee. Counsel represented that the Debtor is current on the payments to SE Toyota, and that the plan has been proposed in good faith.

At the confirmation hearing the Chapter 13 Trustee acknowledged that the Debtor has proposed to pay the unsecured claims at 100% but argued that the Trustee is nonetheless the best disbursing agent for claims. He noted that he would not object if the Debtor proposed to pay the debt through the Trustee at the contract rate of interest as opposed to the *Till* rate of interest.

---

1381, 176 L. Ed. 2d 158 n.14 ("Section 1325(a) . . . requires bankruptcy courts to address and correct a defect in a debtor's proposed plan even if no creditor raises the issue.).
[11] The Trustee initially objected to the Debtor's Chapter 13 plan as originally proposed but the provision regarding payment of the SE Toyota debt is the same in both the original and the amended plans.
[12] *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S. Ct. 1951, 158 L. Ed. 2d 787 (2004).
[13] *See* 11 U.S.C. §§ 326(b), 1302.

4

## CONCLUSIONS OF LAW

**A.     Most debt should be paid through the Chapter 13 Trustee.**

It has long been this Court's procedure based on the Bankruptcy Code and case law that, absent some special circumstance, payments to secured creditors must be made through the Chapter 13 trustee.[14]  Another court in the Northern District of Alabama, Southern Division, took the same approach and wrote an instructive order that this Court has relied on since its issuance in 2003.  In *In re Langham*, Judge Cohen addressed an objection by the United States to a debtor's plan wherein the debtor proposed a direct payment on a student loan debt owed to the U.S. Department of Education.  *In re Langham*, Case No. 02-10081-BGC-13 at 4 (Bankr. N.D. Ala. Aug. 28, 2003) (Cohen, J.).  In that case, Judge Cohen ultimately concluded that "absent a showing by the debtor of an exception, the Court should apply the general rule that the Chapter 13 trustee is the one who should make payments under the plan to creditors" and held that the objection to confirmation by the U.S. Department of Education was due to be sustained.  *Langham*, Case No. 02-10081-BGC-13 at 5 (footnote omitted).

In *In re Burkhart*, a case relied upon by Judge Cohen in *Langham*, the debtor sought to make direct payments to his mortgage creditors to avoid paying the Chapter 13 trustee's fees.  *In re Burkhart*, 94 B.R. 724, 725 (Bankr. M.D. Fla. 1988) (Killian, J.).  Judge Killian determined that, while the debtor could make the on-going mortgage payments direct to the creditors, the arrears had to be paid through the trustee.  *Id*. at 728.  According to Judge Killian:

> The first question is whether or not and to what extent the debtor may act as disbursing agent for payments under the plan. Section 1322(a)(1) of the Bankruptcy Code provides that, "The plan shall provide for the submission of all or such portion of future earnings or other income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan." Section 1326(c) provides that, "[e]xcept as otherwise provided in the plan or in the order confirming the plan,

---

[14] This Court typically does not require long-term debts such as regular, on-going mortgage payments to be made through the trustee.

5

> the trustee shall make payments to creditors under the plan." The Bankruptcy Code thus contemplates that the trustee will act as the disbursing agent in most instances. It nonetheless clearly envisions that there will be exceptions.
>
> . . . .
>
> [A]bsent any exception, the trustee should act as disbursing agent for payments under the plan. While there are sound reasons to except the current [mortgage] payment from the trustee's control, the debtor in this case has not advanced, nor has the Court found, any reason to create an exception for the arrearage payments. The debtor's ability to cure the default on a home mortgage is frequently the heart of a Chapter 13 plan. The arrearage payments are temporary and catch-up in nature, and they typically are accounted for separately by the secured creditor. The trustee can disburse the arrearage payment without interfering with the established debtor-creditor relationship, and, furthermore, in so doing the trustee is thereby able to continue to monitor the debtor's compliance with the plan.

*Id*. at 725, 726.[15]

Like the courts in *Langham* and *Burkhart*, this Court concludes that, pursuant to §§ 1322(a)(1) and 1326(c), the Bankruptcy Code contemplates that debts shall be paid through the Chapter 13 trustee unless an exception from the general rule exists. The *Burkhart* court drew distinctions between on-going monthly mortgage payments – an "exception" to the general rule so to speak – and catching up or curing mortgage arrearage payments. Similarly, this Court has typically confirmed debtors' plans proposing to make regular monthly mortgage payments direct, thereby leaving the debtors with some responsibility for debts secured by their homes; debts that in most cases will continue long past the expiration of the bankruptcy case that are tied to the assets that debtors often cherish the most, as many bankruptcy cases are filed in an effort for debtors to save their homes.[16]

---

[15] Judge Killian cited to *In re Hines* in which that court opined that, since debtors usually have to continue making mortgage payments past the end of the Chapter 13 case, debtors should make the mortgage payments direct to prevent having to take the task back over from the trustee once the case has ended. *Burkhart*, 94 B.R. at 726 (citing *In re Hines*, 7 B.R. 415, 421 (Bankr. D.S.D. 1980)).

[16] There is an exception to the exception. On rare occasions this Court has ordered that on-going or regular monthly mortgage payments be made through the Chapter 13 Trustee, such as when a debtor is focused on keeping a house despite struggling to make the monthly payments. By making those payments through the Trustee the debtor perhaps gets a better understanding of how much of the debtor's income it will take to keep the mortgage payments current while still maintaining regular living expenses. After all, if payments to the Trustee are not kept current the debtor may quickly be the subject of a Trustee's motion to dismiss the case. Another example of this exception is where a

Case 19-05061-TOM13    Doc 30    Filed 06/25/20    Entered 06/25/20 15:16:14    Desc Main
Document      Page 6 of 18

The automobile debt that the Debtor in this case would like to pay direct is analogous to the mortgage arrearage payments that the *Burkhart* court concluded must be paid through the trustee. Chapter 13 bankruptcy is designed to give debtors a breathing spell, providing debtors with a chance to spread the repayment of secured debt, including arrearages on secured debt, over a period of time, hopefully reducing payments to amounts that debtors can afford to repay.[17] In addition Chapter 13 allows debtors to pay unsecured creditors over time to the extent they can afford to do so. Chapter 13 is designed to work by combining secured debt (including automobile loans and mortgage arrears) and unsecured debt together, allowing the debtor to make one payment to the trustee for the combined debts; the trustee subsequently distributes the payments to creditors pursuant to the confirmed plan. At the end of a successful case the debtor has discharged debts that he or she may have struggled to pay prepetition. The Chapter 13 system works in substantial part because of the existence of the Chapter 13 trustee who simplifies the act of paying creditors for the debtor. In turn, the Chapter 13 trustee receives a fee collected from the payments made to the trustee pursuant to the debtor's Chapter 13 plan. *See* 11 U.S.C. § 326; 28 U.S.C. § 586(e)(1)(B) and 11 U.S.C. § 1302(e)(1)(B) (1986).

In this case, the Debtor represents that he is current on his automobile payments, and, in effect, by seeking to pay the automobile debt direct the Debtor seemingly indicates that he does not need or want the protection of the Court or the services of the Chapter 13 Trustee regarding this debt. If the Court allows the Debtor to pick and choose which debts may be paid direct, then the simplicity and effect of Chapter 13 and the resulting debt consolidation for the Debtor may

---

debtor has had difficulty dealing with his or her mortgage company or has had to deal with changing mortgage servicers. By making mortgage payments through the Trustee the debtor receives a break from communications attempted by the mortgage company or servicer and makes the Trustee responsible for dealing with mortgage company issues.

[17] Although it is beyond the scope of this Memorandum Opinion and Order to discuss in detail, it is important to note that not all secured debts may be modified; for example, claims secured the debtor's principal residence and payments on automobiles purchased within 910 days prior to the bankruptcy filing date. *See* 11 U.S.C. §§ 1322(b)(2), 1325.

7

unravel. The reasons advanced by the Debtor in support of his argument that the automobile debt be paid direct include paying the debt off more quickly and saving money in interest and trustee compensation. The Chapter 13 Trustee has indicated he does not object to the Debtor's use of the contract rate of interest versus the *Till* rate of interest with regard to the automobile debt. The Court does not find that the remaining reasons, i.e., quicker payment of the debt and avoiding the Chapter 13 Trustee's compensation, to be sufficient in warranting an exception to the general rule that the Trustee is the best disbursing agent and should thus administer the debt.[18] Further, the potential harm to the Debtor in that he does not fully benefit from the Chapter 13 and a full consolidation of his debts and, as discussed infra, the potential harm to the creditors, outweighs any remote and unlikely benefit for the Debtor.

Another consideration is that by paying the automobile debt direct the Debtor could be risking his ability to have the automobile debt discharged in this case. According to the recent Eleventh Circuit Court of Appeals case *In re Dukes*, 909 F.3d 1306 (11th Cir. 2018), direct pay claims are potentially not "provided for" by the plan and therefore are not discharged. In *Dukes*, the debtor had two mortgages owed to the same creditor, and she was current on both mortgage payments at the time she filed her bankruptcy case. *Id*. at 1311. With regard to the mortgages, under the section entitled "Paid directly to the Creditor," the debtor's plan set out the name of the mortgage creditor, the total estimated mortgage claims, and the amounts of the adequate protection payments to be paid direct. *Id*. As noted by the Eleventh Circuit, the debtor's "plan [did] not set repayment terms for the [creditor's] mortgages, identify a repayment schedule, or otherwise mention the mortgages." *Id.* at 310. After the debtor made all of her payments to the trustee, she

---

[18] *Perez*, 335 B.R. at 410 ([I]t is improper for the Court to permit debtors to make home mortgage payments directly for the *sole purpose* of avoiding the trustee's percentage fee.) (emphasis in original); *Barber v. Griffin (In re Barber)*, 191 B.R. 879, 886 (D. Kan. 1996); *In re Genereux*, 137 B.R. 411, 413 (Bankr. W.D. Wash. 1992).

received a discharge of "'all debts provided for by the plan.'" *Id*. at 1312.

Although the debtor in *Dukes* made all of her plan payments, she stopped making payments on her regular monthly mortgage obligation sometime during the bankruptcy case. *Id*. After the case was over, the mortgage creditor foreclosed on the second mortgage, sought a judgment against the debtor on the first mortgage, then brought an adversary proceeding against the debtor regarding whether her bankruptcy discharge included her personal liability on the first mortgage loan. *Id*. The bankruptcy court determined, and on appeal the district court agreed, that because the debt was not "provided for" in the debtor's plan, it was not discharged.[19] On further appeal, the Eleventh Circuit Court of Appeals held that

> for a debt to be "provided for" by a plan under § 1328(a), the plan must make a provision for or stipulate to the debt in the plan. Because Debtor's plan did nothing more than state that the [creditor's] mortgage would be paid outside the plan, it was not "provided for" and was not discharged.

*Dukes*, 909 F.3d at 1310. The court explained that "Supreme Court precedent defines 'provided for' more narrowly to require that the plan either stipulate to or make a provision for the debt. In other words, the plan's terms must, in some way, affect or govern the debt's repayment." *Id*. at 1312.

In mentioning Supreme Court precedent, the Eleventh Circuit was referring, at least in part, to *Rake v. Wade*, 508 U.S. 464, 113 S. Ct. 2187, 124 L. Ed. 2d 424 (1993) in which the Supreme Court addressed the meaning of "provided for" in the context of Bankruptcy Code § 1325(a)(5). *Dukes*, 909 F.3d at 1313. In *Rake*, the debtor proposed to pay mortgage arrears through the trustee and pay regular mortgage payments direct to the creditor. *Dukes*, 909 F.3d at 1314 (citing *Rake*,

---

[19] In *Dukes* there was another reason that the debt was not discharged – the debt at issue in that case was a mortgage debt that, pursuant to § 1322(b)(2), could not be modified as it was a claim secured only by the debtor's principal residence. *Dukes*, 909 F.3d at 1310. On appeal, the Eleventh Circuit Court of Appeals held that a discharge of the debt would have been an impermissible modification of the creditor's rights under the loan documents. *Id*.

9

508 U.S. at 466-67, 113 S. Ct. 2187). According to the Eleventh Circuit:

> *Rake's* distinction between the two claims for underlying debt and arrearages is instructive here. Under the Supreme Court's analysis, the arrearages on the mortgages were "'provided for' by the plan[s]" because they were to be "paid off within the life of the plans pursuant to repayment schedules established by the plans." [*Rake*, 508 U.S. at 473, 113 S. Ct. 2187)] (emphasis added). By contrast, the underlying debts paid outside the plan "were simply 'maintained' according to the terms of the mortgage documents." *Id*. Although the Court did not address whether the underlying debts were "provided for by the plan," its analysis suggests that claims wholly governed by the original loan instruments – rather than the terms of the bankruptcy plan – are not "provided for by the plan" in the sense Chapter 13 contemplates.

*Dukes*, 909 F.3d at 1315 (first alteration in original).

As in *Dukes*, the Debtor in this case provided the name of the secured creditor and the total claim amount; unlike *Dukes*, the Debtor did disclose the amount of the monthly payment. Regardless though, the plan does not disclose the interest rate, the loan term (although Debtor's counsel noted at the hearing that less than two years remain), or any other details regarding the automobile debt. The plan does not affect or govern the repayment terms of the automobile debt owed to SE Toyota; in other words, the amended plan indicates that the debt will be simply maintained and wholly governed by the original loan instruments. As a result, based on *Dukes*, the automobile debt may not be considered as "provided for" by the plan as the term has been interpreted by the Eleventh Circuit Court of Appeals and therefore may not be included in any discharge that the Debtor receives. If the Debtor pays the automobile debt direct and pursuant to the contract, upon paying the debt off it will not matter if the debtor receives a discharge since the debt will have been satisfied – assuming that everything goes according to plan. However, as will be explained below, unforeseen circumstances could result in negative consequences to other creditors and the Debtor if the automobile debt is not discharged.

Counsel for the Debtor has argued that since the Debtor proposes to pay all unsecured debts

10

in full then no creditor will be harmed by his paying the automobile debt direct. This theory that other creditors will not be harmed hinges on the assumption that nothing goes wrong, i.e., that the Debtor will not experience any problems that could affect his ability to pay. The Debtor is self-employed and, based on this Court's experience, income from self-employment can fluctuate. If the Debtor develops cash flow issues, then he is placed in the position of deciding what gets paid – the Chapter 13 payment or the automobile debt. If the Debtor chooses to pay the automobile debt, other creditors will certainly be harmed.[20] However, should the Debtor choose to instead pay the Trustee instead of the automobile debt then SE Toyota could declare a default, repossess the vehicle, and pursue a deficiency balance, which could impact the Debtor's ability to make payments to the Trustee. Thus, should something go wrong, creditors other than SE Toyota could be harmed no matter which obligation the Debtor chooses to pay. In another scenario, a deficiency judgment could result should the automobile be wrecked and the insurance proceeds be insufficient to pay off the debt. Again, SE Toyota's pursuit of a deficiency balance could result in harm to other creditors. Aside from the harm that could befall other creditors if the Debtor does not receive a discharge of the automobile debt, obviously harm will befall the Debtor as well – the Debtor will remain burdened by a debt that could have taken care of had the Debtor simply paid the debt through the Trustee.

Of course, neither the Debtor nor the Court can accurately predict what may happen down the road. It is possible that nothing will go wrong, that the automobile debt will be paid quickly, and the other debts be paid in full as proposed. However, based on this Court's experience, it is common for a Chapter 13 case to take an unexpected turn. Potential harm to the Debtor if he

---

[20] Furthermore, should the Debtor successfully pay off the automobile debt direct in a period of time shorter than the 60 months of his plan duration, there is a risk that some problem could occur further down the road and thus other creditors are at risk that their claims will not be paid in full. Paying SE Toyota more quickly removes the risk that SE Toyota will be harmed should the Debtor experience difficulties in the latter months of his bankruptcy case.

11

cannot receive a discharge of the automobile debt, and potential harm to other creditors if the Debtor cannot pay as proposed, could be minimized, if not eliminated, if the automobile debt is paid through the Chapter 13 Trustee. The Debtor has not established that his reasons for excluding the debt from payment through the Trustee justifies the potential risk if such an exception is made.[21]

**B.     Certain factors may be relevant in determining whether direct payments are appropriate.**

The Bankruptcy Code contemplates that reasons could exist that would justify an exception to the general rule that debts should be paid through the Chapter 13 trustee. A case that is instructive when considering whether payments should be made direct is *In re Perez*, 339 B.R. 385 (Bankr. S.D. Tex. 2006), *aff'd sub nom. Perez v. Peake*, 373 B.R. 468 (S.D. Tex. 2007). In *Perez*, several debtors had cases pending in certain divisions of the Southern District of Texas, wherein it was required that regular monthly mortgage payments had to be made to the Chapter 13 trustee for distribution. *Perez*, 339 B.R. at 390. The debtors, who had differing circumstances and hardships, were all united in arguing that that they should be allowed to make direct payments on their mortgage debts in order to avoid the "not insignificant" trustee's fee on administering their mortgage payments. *Id*. at 392-93. In determining whether the debtors should be allowed to pay the mortgage payments direct, the court identified twenty-one factors that have been considered when courts addressed whether a plan proposing direct payments should be confirmed.[22] *Id*. at

---

[21] It should be noted that it has long been this Court's position that, if a debtor is allowed to pay an automobile debt direct (such as when the obligation is in the name of the debtor and a co-obligor, and the co-obligor drives the vehicle and makes the payments), then if the automobile creditor seeks relief from the stay the debtor is rarely entitled to the protection from the Court that he or she could have otherwise received. In other words, if the debtor has a "direct pay" obligation, and there is a default on the payments, the debtor has virtually no defense if a motion for relief from stay regarding the collateral is filed since the debtor's plan proposed to deal with the obligation directly. As previously explained, having the debt paid through the trustee and thus being subject to discharge could result in a benefit to the debtor.

[22] The factors identified by the court are:

12

409. While the court analyzed many of these factors, it considered "whether the debtor has been responsible, particularly in his past dealings with creditors and the trustee" as especially important in the case before it. *Id*. at 409-10. After reviewing the debtors' circumstances in each of the cases, the court ultimately determined that "the factors weigh against granting the relief sought" as to all of the debtors. *Id.* at 409-10, 414.

Certain factors identified in *Perez* appear to be particularly relevant in this case.

1. **The degree of responsibility of the debtor, as evidenced by his past dealing with his creditors.** The Debtor has substantial unsecured debt and, according to his schedules, a considerable portion of that debt has been incurred in the last few years, including $40,000 in unsecured debt incurred within a six-month period. Much of the debt is in the nature of credit cards and personal loans, some with high interest rates. No evidence or testimony was provided to explain this large amount of unsecured debt or how those funds were spent by the Debtor. Further, the Court is unaware of the circumstances that led the Debtor to bankruptcy, such as whether the Debtor was forced to resort to debt to keep his business afloat due to insufficient cash flow, or whether the Debtor supplemented his income and perhaps enhanced his life style with credit cards and loans. The Court is simply without enough information or facts to determine

---

(1) the degree of responsibility of the debtor, as evidenced by his past dealing with his creditors, (2) the reasons contributing to the debtor's need for filing a Chapter 13 petition and plan, (3) any delays that the trustee might make in remitting the monthly payment to the targeted creditor, (4) whether the proposed plan modifies the debt, (5) the sophistication of the targeted creditor, (6) the ability and incentive of the creditor to monitor payments, (7) whether the debt is a commercial or consumer debt, (8) the ability of the debtor to reorganize absent direct payments, (9) whether the payment can be delayed (10) the number of payments proposed to pay the targeted claim, (11) whether a direct payment by the debtor under the proposed plan will impair the trustee's ability to perform his standing trustee duties, (12) unique or special circumstances of a particular case, (13) the business acumen of the debtor, (14) the debtor's post-filing compliance with statutory and court-imposed duties, (15) the good faith of the debtor, (16) the plan treatment of each creditor to which a direct payment is proposed to be made, (17) the consent, or lack thereof, by the affected creditor to the proposed plan treatment, (18) the ability of the trustee and the court to monitor future direct payments, (19) the potential burden on the trustee, (20) the possible effect upon the trustee's salary or funding the U.S. Trustee system, and (21) the potential for abuse of the bankruptcy system.

*Id*. at 409 (internal citations omitted).

whether the Debtor had kept up with his obligations until some kind of disaster struck, or whether the Debtor (like many others) has difficulty in managing his finances, in which case paying the automobile debt through the Trustee would help the Debtor make this case work. Without more information it appears the more prudent course of action would be for the Trustee to disburse the automobile payments.

2. **The reasons contributing to the debtor's need for filing a Chapter 13 petition and plan.** The analysis of this factor is basically the same as the prior factor in that the Court has insufficient information to determine what led the Debtor to this Court. Again, absent more, the Court finds no reason to deviate from the general rule that debts should be paid through the Trustee.

3. **Whether the debt is a commercial or consumer debt**. According to the court in *Perez*, the fact that a debt is commercial in nature supports a debtor's bid to pay the debt direct since a "debtor is more likely to pay his major secured creditor for fear of having financing cut off and thereby forcing a shut down of the business operations." *Perez*, 339 B.R. at 414. In this case the Debtor, who has indicated he is self-employed, may have a mix of both commercial and consumer debt, but the debt appears to be in his name as an individual. Thus, it is unclear what the nature of the automobile debt is, and since there was no evidence of the debt being anything other than personal, this factor suggests the debt should be paid through the trustee.

4. **Unique or special circumstances of a particular case.** At the hearing, counsel for the Debtor argued that a direct payment would be appropriate due to the "unique" circumstances of this case, including the lower-than-*Till* rate of interest, the length of time remaining on the contract, the money saved by not paying the Trustee's commission on the debt, and that creditors will not be harmed by the direct payment since the Debtor has proposed a 100% case. Out of the asserted unique circumstances, only the interest rate may be truly unique; not

14

Case 19-05061-TOM13   Doc 30   Filed 06/25/20   Entered 06/25/20 15:16:14   Desc Main
Document      Page 14 of 18

many debtors before this Court have interest rates that are lower than what they would pay using the *Till* rate of interest. However, the lower contract rate of interest is irrelevant in this case since the Trustee has stated he will not object to using it as opposed to the *Till* rate.

As to the other identified unique circumstances, they occur routinely in cases before this Court. Debtors often have automobile debts that, if paid according to contract terms, would be paid off before the end of the bankruptcy case.[23] What is unusual is that the Debtor does not want to take advantage of the opportunity to pay his automobile payment over an extended period of time and lower his payments. In essence, the Debtor's amended plan gives preferential treatment to the automobile lender; the automobile debt is to be paid pursuant to the contract terms while the other obligations will not be paid based on any contractual terms agreed to by the Debtor. As noted, it seems that the Debtor is indicating he wants the protection of this Court in some respects but feels he does not need it in all respects. In the same vein, it appears that the Debtor would like to use the services of the Trustee with regard to most of his debt, but not with regard to his automobile payment which, according to his attorney, would allow him to save money. All debtors could save money if they did not pay fees to a Chapter 13 trustee. However, without those fees, Chapter 13 trustees could not operate, and without the trustees, there is no Chapter 13. Debtors cannot choose which debts they would like the trustee to service absent a persuasive reason for the exception. In this case, the Debtor's desire to save money by not paying the Chapter 13 Trustee's fees is not a legitimate reason.

The Debtor has identified his proposed 100% repayment plan as another circumstance of this case supporting his request to pay the automobile debt direct. It is not unique for a debtor to propose a 100% plan, and yet, debtors rarely seek to pay an automobile debt direct. Even more

---

[23] There is the possibility that the Debtor hopes to keep the benefit of the automatic stay until the automobile debt is paid off then elect to cease the payments to the Trustee that are being made for the benefit of unsecured creditors.

15

rarely does this Court allow such a request. The automobile debt is not even the Debtor's biggest obligation – he owes more on one particular unsecured debt - yet the Debtor intends to pay that debt through the Trustee while proposing special treatment for the automobile debt. If the Debtor pays the automobile debt direct, once the debt is paid off in less than two years, he will arguably have an extra $456 per month available to him, and SE Toyota will have received payment as planned despite the Debtor's bankruptcy. On the contrary, the Debtor's other creditors will not receive any benefit from the earlier payoff, as they will continue to receive the same amount through the Trustee for the entire pendency of the Debtor's case. The Court does not find that there are any unique or special circumstances that would justify an exception from the Debtor paying the automobile debt through the Trustee. In fact, a direct payment would unjustifiably favor the automobile debt, which is not even the largest claim (although it is the only secured claim).

5. **The good faith of the Debtor**. The Court does not find any bad faith on the part of the Debtor in proposing his plan; however, the result of confirming this plan would result in a significant disadvantage to the unsecured creditors and thus the Court finds that this factor weighs against the proposed direct payment on the automobile debt.

6. **The plan treatment of each creditor to which a direct payment is proposed to be made.** The Debtor has proposed to continue paying the debt to SE Toyota pursuant to the original contract terms through payments of $456 per month. This proposal will not negatively impact SE Toyota; however, as already explained, the proposal could negatively impact the Debtor's other creditors.

7. **The ability of the trustee and the court to monitor future direct payments.** If the Debtor pays the automobile debt direct then neither the Trustee nor the Court will have any way to monitor those payments. In this case, the Debtor has a history of taking out large loans in

16

short periods of time, and without further information as to why that occurred, this factor weighs in favor of the automobile debt being paid through the Trustee.

## **CONCLUSION**

The Debtor was given the opportunity to provide cases to the Court that support his position that the automobile debt should be paid direct. Most of the cases cited by the Debtor concern ongoing mortgage payments and are distinguishable from the facts and circumstances now before the Court. What the Debtor requests is a deviation from the usual practice based on case law in this District that, except for ongoing mortgage payments or except for secured debts where a co-obligor has possession of, uses, and pays for the collateral, debts are to be paid through the Chapter 13 Trustee. The Bankruptcy Code contemplates that a trustee will typically be the disbursing agent, but also that there will be rare times when an exception is appropriate; indeed, this Court has allowed debts to be paid direct but these exceptions have been fairly few and far between. While the Debtor has argued that this case presents unique circumstances that would justify an exception, in actuality, the circumstances of this case are not so different from other cases routinely before the Court. By participating in this bankruptcy case, the Debtor will receive the benefits of Chapter 13 and, in turn, the Debtor must accept the obligations that come with it.

Considering that the Bankruptcy Code contemplates payments shall be disbursed through a Chapter 13 trustee, that the Debtor risks possible issues relating to a discharge as to the automobile debt if it is paid direct, that a direct payment could prejudice other creditors, and that the Debtor has provided no credible reason for the Court to deviate from the usual rule and allow a direct payment, the Court concludes that confirmation of the Debtor's Chapter 13 plan as proposed is due to be denied.

It is therefore **ORDERED, ADJUDGED, and DECREED** that the Chapter 13 Trustee's

Objection to Confirmation is **SUSTAINED**.

The Debtor shall have 14 days from the date of entry of this Memorandum Opinion and Order to file an amended plan, should he choose to do so. If the Debtor timely files an amended plan, then the hearing on confirmation shall be reset. If the Debtor does not timely file an amended plan, then the Trustee's Motion to Dismiss will be granted.

Dated: June 25, 2020  /s/ Tamara O. Mitchell
TAMARA O. MITCHELL
United States Bankruptcy Judge

TOM/dgm